UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AMY C.,

                     Plaintiff,

v.                                        3:20-CV-0546
                                        (ML)

COMMISSIONER OF SOCIAL SECURITY,

                     Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LACHMAN, GORTON LAW FIRM<br>  Counsel for Plaintiff<br>P.O. Box 89<br>1500 East Main Street<br>Endicott, New York 13761 | PETER GORTON, ESQ. |
| SOCIAL SECURITY ADMINISTRATION<br>  Counsel for Defendant<br>J.F.K. Federal Building, Room 625<br>15 New Sudbury Street<br>Boston, Massachusetts 02203 | LISA SMOLLER, ESQ. |

MIROSLAV LOVRIC, United States Magistrate Judge

## MEMORANDUM-DECISION AND ORDER

Plaintiff Amy C. ("Plaintiff"), brings this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c) seeking judicial review of the final decision of the Commissioner of Social Security

("Defendant" or "Commissioner"), denying her application for Social Security Disability

Insurance ("SSDI") benefits.  (Dkt. No. 1.)  This case has proceeded in accordance with General

Order 18 of this Court which sets forth the procedures to be followed when appealing a denial of

Social Security benefits.  Currently before the Court are Plaintiff's motion for judgment on the

pleadings (Dkt. No. 11) and Defendant's motion for judgment on the pleadings (Dkt. No. 12). For the reasons set forth below, Defendant's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is granted (Dkt. No. 12), the Commissioner's decision denying Plaintiff SSDI benefits is affirmed, and Plaintiff's Complaint (Dkt. No. 1) is dismissed.

## I.   RELEVANT BACKGROUND

### A.   Factual Background

As of the date of the administrative hearing on April 15, 2019, Plaintiff was 46 years old. (Administrative Transcript ("T"). 20-21, 65-66.)  Plaintiff was a high school graduate and attended one year of college.  (T. 13, 20, 37.)  Plaintiff has past relevant work as a furniture rental clerk, courtesy booth cashier, book jacket cover machine operator, convenience store clerk, assistant manager retail sales, retail customer service desk clerk, and retail cashier.  (T. 19, 37-43.)  In her application, Plaintiff alleged disability beginning June 16, 2017.[1]  (T. 12.) Plaintiff has not engaged in substantial gainful work since her alleged disability began.  (T. 12, 43.)  Plaintiff lives in a mobile home with her husband and three minor children.  (T. 36-37.)

### B.   Procedural History

On July 10, 2017, Plaintiff filed an application for SSDI benefits, alleging disability beginning June 16, 2017, due to Crohn's disease, osteoarthritis, anxiety, depression, fibromyalgia, hypothyroid, lumbar spondylosis, sacroiliitis, obsessive compulsive disorder, migraines, and acid reflux.  (T. 10, 13, 35, 66-67, 69).  Plaintiff's Crohn's disease was in remission at the time of the ALJ hearing.  (T. 35.)  Plaintiff's application was denied initially on September 26, 2017.  (T. 10, 77.)  Plaintiff requested a hearing, which was held on March 27,

---

[1]    In Plaintiff's application for benefits, she alleged her disability began an onset June 20, 2017 (T. 142), but at the ALJ hearing, Plaintiff's attorney agreed with the ALJ that Plaintiff's alleged disability began on June 16, 2017 (T. 33).

2019, before Administrative Law Judge ("ALJ") Kenneth Theurer.  (T. 10, 32-64.)  The ALJ issued an unfavorable decision on April 15, 2019.  (T. 10-21.)  This became the Commissioner's final decision on March 13, 2020, when the Appeals Council confirmed and adopted the ALJ's decision.  (T. 1-6.)

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following eleven findings of fact and conclusions of law.  (T. 12-21.)  First, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2022.  (T. 12.)  Second, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of June 16, 2017.  (*Id.*)  Third, the ALJ found that Plaintiff had the following seven severe impairments: (1) Crohn's disease, (2) osteoarthritis, (3) anxiety, (4) depression, (5) fibromyalgia, (6) hypothyroid, and (7) lumbar spondylosis.  (T. 13.)  Fourth, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings").  (T. 13-14.)  More specifically, the ALJ considered Listings 1.04 (disorders of the spine), 9.00 (endocrine disorders), 12.04 (bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.08 (personality and impulse-control disorders).  (*Id.*)  The ALJ also considered Plaintiff's fibromyalgia, her living situation with her family as she was able to independently perform a broad range of activities of daily living, including self-care, food preparation, cleaning, laundry, shopping, childcare, money management, driving, and participating in hobbies such as watching television, reading, and socializing with friends, and how her mental impairments may have resulted in limitations in the following four areas of function: (1) understanding, remembering, and applying information; (2) interacting with others;

(3) concentrating, persisting, and maintaining pace; and (4) adapting and managing self.  (*Id.*)

Fifth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform

> sedentary work, as defined in 20 CFR 416.967(a) except she can
> occasionally lift and carry ten pounds, can sit for approximately six
> hours, and stand or walk for approximately two hours in eight hour
> day with normal breaks; she can occasionally climb ramps or
> stairs, but never climb ladders, ropes or scaffolds; she can
> occasionally balance, stoop, kneel, crouch, and crawl.  Work is
> limited to simple routine, and repetitive tasks, in a work
> environment involving only simple, work-related decisions, with
> few, if any, work place changes.

(T. 14-15.)  Sixth, the ALJ found that Plaintiff cannot perform any past relevant work as a

furniture rental clerk, courtesy booth cashier, book jacket cover machine operator, convenience

store clerk, and assistant manager retail sales because Plaintiff is limited to sedentary exertional

work with additional limitations.  (T. 19-20.)  Seventh, the ALJ found that Plaintiff was born in

1970, and was 46 years old, which is defined as a younger individual age (between ages 45 and

49), on the date that her alleged disability began.  (T. 20.)  Eighth, the ALJ found that Plaintiff

has a high school education and is able to communicate in English.  (*Id.*)  Ninth, the ALJ found

that transferability of job skills is not material to the determination of disability because using the

medical-vocational rules as a framework supports a finding that Plaintiff is "not disabled,"

whether or not Plaintiff has transferable job skills.  (*Id.*)  Tenth, the ALJ found that considering

Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant

numbers in the national economy that she can perform.  (T. 20-21.)  More specifically, the

vocational expert testified that, given these factors, Plaintiff would be able to perform the

requirements of representative occupations such as addresser, telephone quotation clerk, and

stuffer.  (*Id.*)  Eleventh, the ALJ therefore concluded that Plaintiff had not been under a disability

from June 16, 2017, through the date of his decision.  (T. 21.)

D.      **The Parties' Briefings on the Motions**

1.      **Plaintiff's Motion for Judgment on the Pleadings**

Generally, Plaintiff makes two arguments in support of her motion for judgment on the

pleadings.  (*See generally* Dkt. No. 11 at 11-19 [Pl.'s Mem. of Law].)

First, Plaintiff argues that the ALJ fails to assess Plaintiff's need for a sit/stand option.

(Dkt. No. 11 at 11-14.)  More specifically, Plaintiff argues that the ALJ failed to properly

analyze (1) Physician Assistant Aspen D'Angelo's June 2017 opinion that Plaintiff limit herself

to work that would allow her "to alternate between standing and seated positions as well as a

lifting restriction of no greater than 10 pounds," (2) Dr. Oven's February 2019 opinion that

Plaintiff would need to change positions approximately every one to two hours, (3) the frequency

with which Plaintiff needs to change positions, which is supported by evidence of (a)

musculoskeletal pain, (b) significant neck and lower back pain radiating through her left leg, (c)

morning soreness and stiffness, (d) swelling in the legs and feet and joint pain with prolonged

standing, (e) a scan of her lumbar spine showing an "ample amount of degenerative disc disease

and facet arthropathy, (f) and tenderness, (4) Dr. Mary Ann Moore's opinion that Plaintiff had

restless motor behavior, and "she did stand for some of the evaluation, reportedly due to pain,"

and (5) whether the frequency at which Plaintiff needs to change positions is consistent with the

demands of full-time work because the ALJ failed to (a) address the impact on the occupational

base with the vocational expert, and (b) assess whether her sit/stand limitations were "consistent

with" the RFC that limited the scope to "normal breaks."  (*Id.*)

Second, Plaintiff argues that the ALJ improperly weighs the medical opinions that

address the limitations of the workplace and excessive absenteeism.  (*Id.* at 14-19.)  More

specifically, Plaintiff argues that the ALJ does not provide "overwhelmingly compelling"

reasons for not giving "treating sources some extra consideration for obvious and common-sense reasons" including Plaintiff's limitations provided by (1) Dr. Masarech, who opined that Plaintiff would be off-task due to pain, fatigue, diminished concentration or work pace, or need to rest more than 33% of the day, (2) Dr. Blansky, who opined Crohn's disease would cause Plaintiff fatigue, diminished concentration, and diminished work pace, but he did not rate the degree to which Plaintiff would be off-task, (3) Dr. Oven, who opined Plaintiff would be off-task more than 15% of the time, and (4) psychologist Thomas Harding, who opined that Plaintiff has difficulty concentrating, has racing thoughts, is restless, feels her difficulty concentrating is related to her pain.  (*Id*.)

### 2.    Defendant's Motion for Judgment on the Pleadings

Generally, Defendant makes three arguments in support of his motion for judgment on the pleadings.  (*See generally* Dkt. No. 12 at 3-18 [Def.'s Mem. of Law].)

First, Defendant argues that substantial evidence supports the ALJ's RFC determination of Plaintiff's need to sit and stand.  (Dkt. No. 12 at 3-8.)  More specifically, Defendant argues that (1) Plaintiff has the ability to perform sedentary work, as defined by 20 C.F.R. § 404.1567(a)[2], as opined by (a) Physician Assistant D'Angelo that limited Plaintiff to lifting no more than 10 pounds and alternating between sitting and standing, (b) and Dr. Thomas Oven that Plaintiff (i) could sit for six hours in an eight-hour day, (ii) could stand/walk for four hours in an eight-hour day with standing positions, (iii) could lift no more than 10 pounds, and (iv) would need to change positions every one to two hours, (2) Dr. Richard Blansky opined that even when Plaintiff's Crohn's disease flares, she (a) could sit comfortably, (b) had no loss of strength or

---

[2]      Sedentary work is defined as the ability to lift no more than 10 pounds at a time and occasionally lift or carry articles such as docket files, ledgers, and small tools.  20 C.F.R. § 404.1567(a).

motion in her lower extremities, (c) had no sensory deficits, (d) had full range of motion, and (e) had motor examination that was grossly non-focal, (3) on January 18, 2017, Plaintiff rated her pain as zero out of ten and on May 24, 2017, she rated her pain as two out of ten, (4) on April 18, 2017, Dr. Oven observed that Plaintiff's back and leg pain had resolved with no focal tenderness in her lower back or sacroiliac joints, (5) a CT scan of her lumbar spine showed mild discogenic changes, (6) Nurse Practitioner Bishop observed that there was no synovitis or tenderness in her ankles, and she could get on and off the examination table independently, (7) she reported activities that included cooking, cleaning, laundry, shopping, childcare, and independently driving herself to doctor's appointments that are 35 miles away from her home, (8) Dr. Gilbert Jenouri found that her joints were non-tender, her lower extremity strength was rated as five out of five, and she had only mild restrictions in walking and standing for long periods, and (9) medical opinions are consistent with the ALJ's RFC finding.  (*Id.*).

Second, Defendant argues that substantial evidence supports the ALJ's RFC determination of Plaintiff's need to be off-task and absent from work.  (Dkt. No. 12 at 8-11.) More specifically, Defendant argues that (1) Dr. Masarech (a) did not provide an explanation or support for Plaintiff's restrictions on being off-task and absent other than noting a brief reference to side effects from medications, (b) treatment notes do not support restrictions in work pace and attendance because Plaintiff's January and May 2017 examination reports show her pain rated as zero to two out of ten with findings that did not support limitations, and (c) noted restrictions were inconsistent with (i) Dr. Masarech's own statements because he opined that Plaintiff's impairments caused pain, fatigue, and decreased concentration and work pace, resulting in Plaintiff being off-task more than 33% of the day and missing more than four days of work a month, while also noting no issues of pain, fatigue, and decreased concentration during office

visits in November 2017, June 2018, August 2018, and September 2018, and (ii) statements from

Plaintiff's mental health providers that opined that Plaintiff's speech was logical, coherent, and

goal-directed, her recent and remote memory were not impaired, there were no significant pre-

occupations, her judgment was good, and she could attend and maintain focus, (2) Dr. Blansky

(a) checked statements regarding the presence of Plaintiff's symptoms without providing the

limitations or functional restrictions on her ability to be off-task or absent from work, and (b)

opined in April 2017 based on Plaintiff's Crohn's disease (i) prior to Plaintiff experiencing "any

Crohn's flares," (ii) that was followed by a medical note in July 2017, that found Plaintiff's

Crohn's disease was clinically stable, (iii) that was followed by Dr. Jenouri in September 2017,

who opined that her Crohn's was medically managed without complications, (iv) that was

followed by Dr. Blansky in November 2017, concluding that Plaintiff's Crohn's symptoms had

resolved, and (v) Plaintiff deferred a recommended colonoscopy because "she continued to feel

well overall from a [gastrointestinal] perspective," and (3) Dr. Oven's opinion was not

persuasive because he checked boxes on an assessment form without including supporting

explanations or objective evidence and found Plaintiff had normal physical and mental

examination findings which failed to support his proposed restrictions on being off-task or

absent.  (*Id*.)

Third, Defendant argues that the ALJ correctly did not apply the "overwhelmingly

compelling" standard of review to medical records.  (Dkt. No. 12 at 12-18.)  More specifically,

Defendant argues that the "overwhelmingly compelling" standard was changed (1) in the Social

Security Agency's *Standards for Consultative Examinations and Existing Medical Evidence*, 56

Fed. Reg. 36932, 36934 (Aug. 1, 1991), (2) by the Second Circuit in *Schisler v. Sullivan*, 3 F.3d

563, 567 (2d Cir. 1993), which uphold the Agency's change that "by granting the treating

physician's opinion 'controlling weight' only if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence,' the regulations accord less deference to unsupported treating physician's opinions than do our [Second Circuit] decisions," and (3) since *Schisler*, the Second Circuit has used the overwhelmingly compelling standard without providing "how it can co-exist with regulations that do not presume the validity of opinions that lack support," but in *Schisler* the Court noted that the Circuit must look to the regulations and not caselaw for the standard that ALJs must follow in evaluating treating source opinions. (*Id.*)

### 3.    Plaintiff's Reply

Generally, Plaintiff makes two arguments in her Reply to Defendant's motion for judgment on the pleadings. (*See generally* Dkt. No. 13 at 1-5 [Pl.'s Reply].)

First, Plaintiff argues that Defendant incorrectly advocates that the ALJ did not error by not applying the overwhelmingly compelling standard of reviewing to medical records. (Dkt. No. 13 at 1-4.) More specifically, Plaintiff argues that (1) the overwhelmingly compelling standard is binding with 21 years of *stare decisis*,[3] (2) *Schisler*, 3 F.3d at 563, does not mention the overwhelmingly compelling standard and Plaintiff is asking this Court to "vastly expand its holding by assuming it overruled the overwhelmingly compelling standard," (3) the mere fact that there was a regulation change does not automatically mean the standard does not apply, and (4) the overwhelmingly compelling standard is not dependent on the treating physician rule and,

---

[3]      Plaintiff cites *Riccobono v. Saul*, 796 F. App'x 49 (2d Cir. 2020); *Messina v. Comm'r of Soc. Sec. Admin.*, 747 F. App'x 11, 16 (2d Cir. 2018); *Flynn v. Comm'r of Soc. Sec. Admin.*, 729 F. App'x 119, 121 (2d Cir. 2018); *Gavazzi v. Berryhill*, 687 F. App'x 98, 100 (2d Cir. 2017); *Giddings v. Astrue*, 333 F. App'x 649, 652 (2d Cir. 2009); *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008); *Byam v. Barnhart*, 336 F.3d 172, 183 (2d Cir. 2003); *Shaw v. Chater*, 221 F.3d 126, 135 (2d Cir. 2000); *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999).

therefore, survives the regulatory change, (5) the Court should follow the treating physician rule as stated in *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 861 (2d Cir. 1990), because (a) it is "nearly identical to the 1991 regulations," (b) the Second Circuit stated that "[t]he ALJ is merely a fact-finder and, as such, has no ability to disregard a medical opinion without a contrary medical opinion or an overwhelmingly compelling circumstantial critique," and (c) it is recognized across the country[4] as a "common sense rule that an ALJ as a lay person" cannot just reject a medical opinion without a contrary medical opinion or sufficiently compelling evidence that would permit a lay person to reject an expert medical opinion. (*Id.*)

Second, Plaintiff repeats his previous arguments that were counter to Defendant's position. (Dkt. No. 13 at 4-5.) More specifically, Plaintiff argues that (1) Defendant incorrectly states that Plaintiff needs to change positions every two hours, (2) Plaintiff admits that she has the burden of proof at Steps One through Four, which was satisfied through the submission of medical opinions showing her disability, (3) Defendant's argument that Plaintiff failed to point to any evidence that demonstrates that her symptoms that would cause her to be (a) off-task, (b) absent from work, or (c) need a sit/stand option ignores arguments in Plaintiff's original brief, and (4) per *United States v. Restrepo*, 986 F.2d 1462, 1463 (2d Cir. 1993), Defendant's arguments in the footnotes should not be considered because they were not properly presented. (*Id.*)

### 4.    Defendant's Sur-Reply

Generally, Defendant repeats his arguments in his Sur-Reply. (*See generally* Dkt. No. 18 at 1-6 [Def.'s Sur-Reply].) More specifically, Defendant argues that (1) he is asking the Court to

---

[4]      Plaintiff cites *Jones v. Saul*, 823 F. App'x 434, 439 (7th Cir. 2020); *Storey v. Berryhill*, 776 F. App'x 628, 637 (11th Cir. 2019); *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004); *Diesta v. Berryhill*, 766 F. App'x 481, 482 (9th Cir. 2019).

apply *stare decisis* under *Schisler*, 3 F.3d at 563, (2) a court must correct its course when it learns that it has been applying the law incorrectly and not repeat the error, (3) Plaintiff is incorrect that only the Second Circuit can address the conflicts in this case because "it can and should decide which authority controls before issuing a decision," and (4) the overwhelming compelling standard (a) may not be mentioned in *Schisler*, but is abrogated the standard, (b) the ALJ is granted the authority to evaluate medical opinions with factors that are supported and consistent, and (c) the ALJ is not bound to applying the overwhelming compelling standard because *Schisler*, is the law in this Circuit, and this Court is not bound by *stare decisis* because it is a flexible principle that should not be applied "when governing decisions are unworkable or are badly reasoned."  (Dkt. No. 18 at 1-6.)

## II.    APPLICABLE LEGAL STANDARDS

### A.    Standard of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  To facilitate the Court's review, an ALJ must set forth the crucial factors justifying her findings with sufficient

specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984); *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010) (Kahn, J.).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Featherly*, 793 F. Supp. 2d at 630.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted).  Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153.  In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

B.     **Standard for Benefits**[5]

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically

---

[5]     The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir.

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months."  42

U.S.C. § 1382c(a)(3)(A) (2015).  In addition, plaintiff's

> physical or mental impairment or impairments [must be] of such severity
> that he is not only unable to do his previous work but cannot, considering
> his age, education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national economy, regardless
> of whether such work exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or whether he would be
> hired if he applied for work.

*Id*. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social

Security Administration ("SSA") promulgated regulations establishing a five-step sequential

evaluation process to determine disability.  20 C.F.R. § 416.920(a)(4) (2015).  Under that five-

step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or combination
> of impairments; (3) whether the impairment meets or equals the severity
> of the specified impairments in the Listing of Impairments; (4) based on a
> "residual functional capacity" assessment, whether the claimant can
> perform any of his or her past relevant work despite the impairment; and
> (5) whether there are significant numbers of jobs in the national economy
> that the claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or

non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*,

540 U.S. 20, 24 (2003).

---

1983) (citation omitted).

III.     **ANALYSIS**

A.     **Whether the ALJ Properly Evaluated Plaintiff's Need for a Sit/Stand Option**

After careful consideration, the Court answers this question in the affirmative for the

reasons stated in Defendant's memorandum of law. [6]  (Dkt. No. 12 at 3-8.)  To those reasons, the

Court adds the following analysis, which is intended to supplement but not supplant Defendant's

reasons.

An RFC is the most a plaintiff can do despite her limitations.  20 C.F.R. §§

404.1545(a)(1), 416.945(a)(1).  An RFC is also plaintiff's maximum remaining ability to do

sustained work activities in an ordinary setting on a regular and continuing basis, and the RFC

assessment must include a discussion of Plaintiff's abilities on that basis.  *Melville v. Apfel*, 198

F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at \*2 (S.S.A. July 2, 1996)).

"A regular and continuing basis means eight hours a day, for five days a week, or an equivalent

work schedule."  *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (Mordue, C.J.).

In determining the RFC, a ALJ can consider a variety of factors, including a treating physician's

or examining physician's observations of limitations, plaintiff's subjective allegations of pain,

physical, and mental abilities, as well as the limiting effects of all impairments.  20 C.F.R. §§

404.1545(a), 416.945(a).  The relevant factors considered in determining what weight to afford

an opinion include the length, nature and extent of the treatment relationship, relevant evidence

which supports the opinion, the consistency of the opinion with the record as a whole, and the

---

[6]     Regarding the overwhelmingly compelling standard discussed by the parties, the Court
finds it of no consequence as there exists an alternative and independent position to affirm the
ALJ's decision.  The Court does not adopt, deny, or otherwise make a determination as to the
appropriateness of the overwhelmingly compelling standard as well as *Wagner*, 906 F.2d at 856,
*Schisler*, 3 F.3d at 563, or Social Security Agency's *Standards for Consultative Examinations
and Existing Medical Evidence*, 56 Fed. Reg. at 36934.

specialization (if any) of the opinion's source.  20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist."  20 C.F.R. §§ 404.1527(c)(2)(i)-(iv), 416.927(c)(2)(i)-(iv).  The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion.  *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)).

"An ALJ should consider 'all medical opinions received regarding the claimant.'"  *Reider v. Colvin*, 15-CV-6517, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting *Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)); *see also* SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).  Inconsistency or lack of support from the evidence can constitute a good reason for rejecting an opinion even from a treating physician.  *See Saxon*, 781 F. Supp. 2d at 102 ("The less consistent an opinion is with the record as a whole, the less weight it is to be given.") (citing *Stevens v. Barnhart*, 473 F. Supp. 2d 357, 362 (N.D.N.Y. 2007) (Bianchini, M.J.)); *Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 889 (2d Cir. 2007) (noting that an ALJ may reject an opinion from a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record") (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)); 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (indicating that the extent that an

opinion is consistent with the record as a whole is one of the factors considered when determining the amount of weight to which an opinion is entitled).

Additionally, where a plaintiff's medical record is incomplete, the ALJ has a duty to develop the administrative record. *Pratts v. Chater*, 94 F.3d 34, 37-38 (2d Cir.1996); *see also* 20 C.F.R. §§ 404.1512(d) & 416.912(d).  The Regulations state that prior to an ALJ deciding that a plaintiff is not disabled, he or she will "develop [the claimant's] complete medical history" and "make every reasonable effort to help [the claimant] get medical reports from [his or her] own medical sources."  20 C.F.R. §§ 404.1512(d) & 416.912(d).  The evidence in a claimant's case record must be "complete and detailed enough to allow [the Commissioner] to make a determination or decision about whether [a plaintiff is] disabled[.]"  *Id*. at §§ 404.1513(e), 416.913(e).  Yet, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."  *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (*quoting Perez v. Chater*, 77 F.3d 41, 48 (2d Cir.1996)).  "Ordinarily, development should not be undertaken for the purpose of determining whether a treating source's medical opinion should receive controlling weight if the case record is otherwise adequately developed."  SSR 96-2p, Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188, at *4, (S.S.A.1996). Where opinion evidence is inconsistent, the ALJ weighs the relevant evidence and decides whether a determination on disability can be made.  20 C.F.R. §§ 404.1520b(b), 416.920b(b).

The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing.  SSR 96-9p (S.S.A. July 2, 1996).  An ALJ does not have to strictly adhere to the entirety of one medical source's opinion.  *See Matta v. Astrue*, 508 F.

App'x. 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

Here, the RFC determination was made in accordance with the Regulation and supported by substantial evidence.  In making the RFC determination, the ALJ relied on the medical opinion of Dr. Oven that recommended Plaintiff be limited to lifting no more than 10 pounds and Dr. Jenouri's opinion that she had "mild restrictions walking, standing long periods, bending, stair climbing, lifting, and carrying." (T. 18.)  Dr. Oven also noted that she could sit for six hours and stand/walk for four hours in an eight-hour with the condition that she should change positions every two hours. *Id.*  The ALJ noted that Dr. Blanksy opinion was inconsistent with his own previous opinions that Plaintiff "consistently reported regular bowel pattern of 2 or 3 movements per day and that her condition is in remission." (*Id.*)  Therefore, substantial evidence supports the ALJ's RFC determination of Plaintiff's sit/stand option, specifically that she could lift no more than 10 pounds, and she could alternate between sitting and standing. *See Magee v. Astrue*, 05-CV-0413, 2008 WL 4186336, *7 (N.D.N.Y. Sept. 9, 2008) (Scullin, J.) ("Although the ALJ's RFC finding did not specifically state the frequency with which Plaintiff must alternate between sitting and standing in terms of hours, the ALJ did determine that Plaintiff must be able to alternate positions 'at will' the most flexible of standards-in order to meet the exertional requirements of sedentary work.").

**B.**     **Whether the ALJ Properly Weighed Plaintiff's Need to be Off-Task and Excessively Absent from Work**

After careful consideration, the Court answers this question in the affirmative for reasons one and two as stated in Defendant's memorandum of law but reserves determination as to reason three as there exists an alternative and independent reason for affirming the ALJ's

decision. [7]  (Dkt. No. 12 at 8-11.)  To those reasons one and two in Defendant's memorandum of law, the Court adds the following analysis, which is intended to supplement but not supplant Defendant's reasons.

The Second Circuit stated that "[t]he ALJ is merely a fact-finder and, as such, has no ability to disregard a medical opinion without a contrary medical opinion or an overwhelmingly compelling circumstantial critique." *Wagner*, 906 F.2d at 861.  "[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." *Rosa*, 168 F.3d at 79 (quoting *McBrayer v. Sec'y of Health and Human Serv.*, 712 F.2d 795, 799 (2d Cir. 1983)); *see also Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("While an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted a medical opinion to] of testified before him.'"); *Provencher v. Comm'r of Soc. Sec.*, 15-CV-1287, 2017 WL 56702, at *5 (N.D.N.Y. Jan. 5, 2017) (Suddaby, C.J.) ("It is well settled that the ALJ is not permitted to substitute his or her own expertise or view of the medical proof for any competent medical opinion.") (citing *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015); *Rosa*, 168 F.3d at 79; *Balsamo*, 142 F.3d at 81).

A circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion." *Wagner*, 906 F.2d at 862.

---

[7]      Regarding the overwhelmingly compelling standard discussed by the parties, the Court finds it of no consequence as there exists an alternative and independent position to affirm the ALJ's decision.  The Court does not adopt, deny, or otherwise make a determination as to the appropriateness of the overwhelmingly compelling standard as well as *Wagner*, 906 F.2d at 856, *Schisler*, 3 F.3d at 563, or Social Security Agency's *Standards for Consultative Examinations and Existing Medical Evidence*, 56 Fed. Reg. at 36934.

Here, rather than substituting his own opinion in the absence of alternative medical opinion or non-medical evidence that was overwhelmingly compelling, the Court's review of the record and the ALJ's decision indicates that the ALJ reasonably relied on the medical opinions of Dr. Jenouri and Dr. Oven while reviewing the administrative record as a whole for consistency and noting the amount of weight given to various medical opinions.  The ALJ acknowledges there are inconsistencies with the medical opinions and changes in Plaintiff's Crohn's condition over time.  The ALJ notes that Dr. Jenouri opined that Plaintiff had "mild restrictions walking, standing long periods, bending, stair climbing, lifting, and carrying."  (T. 18.)  The ALJ notes that Dr. Oven found that she "is likely to be off task 15% to 20% of the time and is likely to be absent 1 day per month."  The ALJ found that the "exertional limitations are consistent with the [RFC]; however, the estimates of time 'off task' and absences entirely speculative, and not supported with an explanation or by objective evidence."  (*Id*.)  Dr. Masarech stated that Plaintiff "would need to rest at work, is likely to be off-task 33% or more of the day, and is likely to be absent more than 4 days per month."  (T. 18.)  However, the ALJ did not find objective evidence in the record and found Dr. Masarech's opinion does not provide an explanation as to the reasons why he reached those conclusions.  (*Id*.)  Dr. Blansky found that Plaintiff "would require unlimited access to the bathroom and the need to use the bathroom could not be accommodated."  (*Id*.)  Dr. Blansky also found that Plaintiff's Crohn's symptoms had resolved.  (*Id*.)  The ALJ found Dr. Blansky's opinion unpersuasive because he did not provide a functional analysis or support for his conclusions.  (*Id*.)  The ALJ concluded that the RFC "is supported by the evaluation of claimant's physical limitation by Dr. Jenouri, and in part by the opinion of Dr. Oven . . . as well as the clinical findings of claimant's treatment providers . . ." (T. 19.)  Further, as a qualified expert in the evaluation of medical issues in disability claims, the

ALJ was entitled to rely on Dr. Jenouri's and Dr. Oven's opinions.  20 C.F.R. §§ 404.1512(b)(1)(vi), 404.1513(c), 404.1527(e); *Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012); *Little v. Colvin*, 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) (D'Agostino, J.).

**ACCORDINGLY**, it is

ORDERED that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is

**DENIED**; and it is further

ORDERED that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is

**GRANTED**; and it is further

ORDERED that the Commissioner's decision denying Plaintiff disability benefits is

**AFFIRMED**; and it is further

ORDERED that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: May 4, 2021
       Binghamton, New York

Hon. Miroslav Lovric
United States Magistrate Judge